Filed 9/29/15  M.S. v. R.D. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| M.S., | |
| Plaintiff and Respondent, | G050302 |
| v. | (Super. Ct. No. 05P000379) |
| R.D., | O P I N I O N |
| Defendant and Appellant; | |
| A.S., | |
| Objector and Respondent. | |

Appeal from postjudgment orders of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.  Request for judicial notice and/or request to take additional evidence on appeal.  Granted in part and denied in part.  Second request for judicial notice and/or request to take additional evidence on appeal.  Denied.  Motion for sanctions for frivolous appeal.  Denied.

Law Office of Ronald B. Funk and Ronald B. Funk for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

John L. Dodd & Associates, John L. Dodd; and John S. Cate, Jr., for Objector and Respondent.

\*     \*     \*

## INTRODUCTION

Following a bitter and lengthy custody battle, the trial court awarded sole legal and physical custody of 10-and-one-half-year-old A.S. (the minor), to her biological father, M.S. (father). The minor's mother, R.D. (mother), has challenged the judgment awarding custody to father in a companion appeal, *M.S. v. R.D.* (Sept. 29, 2015, G049068) (nonpub. opn.).

In this appeal, mother challenges the trial court's postjudgment orders. Several of those orders denied mother's requests for a modification of the child custody judgment. Mother failed to present any new evidence or proof of changed circumstances. Mother also challenges the trial court's order denying her request to remove the minor's counsel, John S. Cate, Jr. We find no error on the part of the trial court in denying mother's request. Therefore, we affirm the postjudgment orders challenged by mother in this appeal.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case through the entry of the child custody judgment are set forth in full in the companion appeal, *M.S. v. R.D.*, *supra*, G049068. On August 1, 2013, the trial court denied mother's motion to stay the final judgment. The court also ordered that the minor remain in California.

On September 27, 2013, the Orange County District Attorney's Office declined to file criminal charges of child sexual abuse or molestation against father: "After 20 months of investigation and review of all relevant documents, the decision was

2

arrived at that there is a lack of evidence to support the allegations and the filing of criminal charges." Over the next several days, mother called the police department several times to request welfare checks of the minor.

On October 2, 2013, mother filed an ex parte request for an order to change custody. The court set the hearing on the matter for that afternoon "[b]ecause of the seriousness of the allegations, including assertions [by mother] that the child may have been taken out of the State of California and out of the United States of America in violation of this court's order." (Boldface omitted.) At the afternoon hearing, new counsel substituted in for mother, and the court ordered that the minor be produced to the court at 8:30 a.m. on October 4.

The minor was confirmed to be present in the courthouse, and not abducted to Canada by father, when the matter reconvened on October 4, 2013. The minor's counsel relieved Dr. Thea Reinhart from her appointment as the minor's therapist, and replaced her with Dr. Amy Stark. The court ordered that mother's "parenting time pending hearing be monitored in a way that guarantees no risk of child abduction" (boldface omitted), and that the minor "shall attend school without missing any classes."

During mother's visit with the minor on Sunday, October 6, 2013, mother absconded with the minor, and failed to bring the minor to a scheduled exchange with the minor's paternal aunt at 3:00 p.m. that afternoon.

In a declaration filed after mother's abduction of the minor, the minor's counsel stated he had met with mother on October 2, 2013, and at that time, mother "admitted that the molest allegations were groundless,[1] understood that the [district

_____

    [1] In a later order, the trial court relied on the minor's counsel's declaration, as follows: "In court, minor's counsel represented that [mother] admitted to him that the allegations of sexual abuse against the father were made up." Mother communicated to the minor's counsel that he had incorrectly declared she admitted coaching the minor to make the allegations, and the minor's counsel sought to correct any misstatement with the court. At the next hearing, the court clarified with the minor's counsel that what was in the declaration was correct. Mother claims this demonstrates the trial court's bias against

3

attorney] had declined filing charges against [father], and, while still denying that she had coached [the minor] to make these horrendous claims, nevertheless suggested that peace be restored to [the minor]'s life. She even offered to enter into conjoint counseling [with father] to work on communication. [¶] It was with those statements in mind that I opined to the court on Fri[day] (10/4) that I did not think that her 10/6 visit needed to be monitored. In retrospect, I was wrong, very wrong."

Mother brought the minor to the courthouse on Monday, October 7. The court ordered that the minor be released to her paternal aunt and immediately returned to school. Mother's newly retained counsel substituted out that day.

On October 9, 2013, father's request for a move-away order was heard. At that hearing, the court expressed concern about mother's violation of the court's orders by failing to return the minor after the October 6 visit and by failing to ensure that the minor got to school on time the next day. The court found mother's actions to be unjustified. The court also found that the investigation into father's alleged molestation of the minor was based on falsehoods, citing mother's previous admissions in court, and her recent statements to the minor's counsel. The court found, "[mother] has been tested and she has failed; the Court is unable to trust [mother] at this time." The court therefore ruled: "The orders regarding parenting time for [mother] are vacated. [¶] [Mother] shall have no visitation with the minor child pending further court order unless and until the Court sees contrition on the part of the [mother] and finds reasons to restore the relationship." (Boldface omitted.)

In December 2013, the minor's paternal aunt filed a petition to be appointed the minor's guardian. Father supported the petition; mother opposed it. Father was living in Canada, and was unable to return to the United States, apparently due to problems with immigration. Father's mother had been caring for the minor in father's

her. We discern no bias from the trial court's reliance on the statements in the minor's counsel's declaration.

4

residence in Orange County, but needed to return to her home in Canada due to medical issues, prompting the paternal aunt to seek guardianship of the minor.

In March 2014, mother filed a motion for reconsideration of several prior requests for orders, pursuant to Code of Civil Procedure section 1008, subdivision (b). Two of the earlier requests for orders had asked that the court's custody judgment be modified to give mother sole legal and physical custody. One requested reversal of the October 9, 2013, order that had vacated mother's parenting time, and had ordered that mother was to have no visitation with the minor "pending further court order unless and until the Court sees contrition on the part of the [mother] and finds reasons to restore the relationship." (Boldface omitted.) The final request was an ex parte request to change legal and physical custody, which the court had denied because (1) there was no showing of an emergency, (2) a scheduled hearing for change of custody was already on the calendar, and (3) mother had not provided any assurance that the minor would be safe in her custody.

The only new evidence supporting mother's motion for reconsideration was the declaration of Dean Tong. Tong claimed to be an expert in the field of false allegations of child sexual abuse, and had been retained by father in June 2013 in connection with possible criminal charges. In Tong's declaration in support of the motion for reconsideration, Tong explained that, at father's request, he had summarized the findings of Dr. Grace Coleman's work with the minor, and asserted that his summary had been the basis for the district attorney refusing to file criminal charges against father. Tong declared that he had later learned father had not provided him with a full case history and had misrepresented Dr. Coleman's role in the case. Tong further declared that he now believed Dr. Coleman had violated various ethical codes, and believed the minor had been sexually abused.[2]

---

[2] Both father and father's criminal counsel filed declarations refuting virtually the entirety of Tong's declaration. Specifically, the declarations averred that

5

The trial court issued an order to show cause why monetary sanctions should not be imposed against Tong for (1) knowingly making false accusations of child sexual abuse, (2) violating an order sealing the court records in this case by reading and relying on sealed records, and (3) discussing allegations of sexual abuse of the minor with Dr. Reinhart although the psychotherapist-patient privilege had never been waived. (Fam. Code, § 3027.1; Code Civ. Proc., § 177.5; Cal. Rules of Court, rule 5.14(c).) In response to the order to show cause, Tong withdrew his declaration.

In April 2014, mother filed a request for an order to remove Cate as the minor's counsel. In support of her request, mother attached Dr. Reinhart's deposition transcript, which had been taken in the separate guardianship proceeding. While father, father's counsel, and the minor's counsel were not present at the deposition, a member of the press was.[3]

On April 21, 2014, the minor's counsel filed an ex parte request to permit the minor to move to Napa with her paternal aunt, who was leaving the next day. Mother opposed the request, and filed her own ex parte request to shorten the time on a hearing to change custody so that the minor could be placed with mother. The minor also filed a request for a domestic violence restraining order against mother, in which the minor set forth prior violations of the court's earlier "no contact" order and asserted the minor was in fear that mother, mother's friend, and mother's husband would "continue to stalk her, visit her at school, record her attempts to speak to them, and possibly, abduct her again."

Tong had been retained to opine on damages caused by mother's coaching; Tong's summary of Dr. Coleman's work with the minor was never provided to the district attorney, and therefore could not have been used to convince the district attorney not to file criminal charges against father; and Dr. Coleman was never a therapist for the minor. Father's criminal counsel expressed the opinion that Tong had violated the attorney-client privilege, the duty of confidentiality, and the rules of professional conduct in submitting the declaration in support of mother's motion for reconsideration.

[3] Mother claims that media member, Voice of OC, "applied for and was granted by the guardianship court status as an 'Interested Party' in the guardianship case." Nothing in the appellate record supports this claim, however.

The minor's request for a restraining order also noted that mother was using the minor's name and photograph on social media Web sites to drum up public support for mother's cause.

The trial court denied the minor's counsel's request for the minor to move to Napa, finding it was in the minor's best interests to remain in her current school for the remainder of the school year. The court also denied mother's request for a change of custody. Because the paternal aunt was leaving for Napa the next day, the court appointed Sheryl Edgar, father's previous counsel, as a temporary guardian. Just four days later, the court relieved Edgar as the minor's temporary guardian. The court continued the hearing on all other pending matters.

At a hearing on May 7, 2014, the court appointed Dr. David Mann as a child custody evaluator. The court expressed concern that Dr. Reinhart had been attempting to influence the court with improper ex parte communications. Also at that hearing, the court advised the parties it had found numerous failures to appear by mother on outstanding traffic violations, and ordered her remanded to the custody of the sheriff.

On June 6, 2014, mother filed an ex parte request to (1) dismiss father's relocation request if he failed to pay Dr. Mann, (2) unseal the trial and posttrial transcripts, (3) place prior matters back on calendar, and (4) grant mother custody of the minor based on new evidence and on father's alleged abandonment of the minor. The court denied the request to dismiss father's relocation request, without prejudice, because there was no admissible evidence that father had not paid fees to Dr. Mann. The court denied the request to unseal the transcripts because the matter was on appeal, and mother was therefore required to seek relief from the Court of Appeal. The court refused to place other matters back on calendar because the court's minutes reflected that mother had not appeared on time in court, and the matters went off calendar due to mother's failure to pursue them; this ruling was without prejudice to mother resubmitting her requests for orders. Finally, the court denied mother's request for a change of custody

7

because it was unsupported by credible evidence. The court noted that its denial of the request to change custody was made without prejudice, and that mother "may always file a proper request for order seeking a change of the parenting time arrangement." (Boldface omitted.)

Also on June 6, the court denied mother's request to remove Cate as the minor's counsel. On that date, the court also lifted the previous travel restrictions, permitting the minor to travel under the terms of the judgment.

Mother filed a notice of appeal on June 13, 2014 from the trial court's orders of April 21, April 25, May 7, and June 6, 2014. (Many of these orders cover multiple issues. We have only considered on appeal the issues specifically raised in mother's appellate briefs.)

In August 2014, the court ordered that the minor could reside with her paternal aunt in Napa, California, and transferred the case to the Superior Court of Napa County. The court also ordered reunification therapy between the minor and mother.[4]

---

[4] The minor's request for judicial notice and/or request to take additional evidence on appeal is granted in part and denied in part. All the items that the minor asked this court to take judicial notice of are properly noticeable, as they are all records of courts of this state. (Evid. Code, § 452, subd. (d)(1).) Mother did not file any opposition to this request.

We will take judicial notice of (1) the record in the companion appeal, *M.S. v. R.D.*, *supra*, G049068; (2) the record in prior writ proceeding No. G050449; (3) the record in prior writ proceeding No. G050538; (4) the record in prior writ proceeding No. G050301; and (5) the order on an order to show cause, in Orange County Superior Court, case No. 05P000379, filed August 19, 2014.

The other documents of which the minor asks us to take judicial notice are not relevant to the issues raised by this appeal, and we deny the request as to them.

8

I.

*REQUESTS TO CHANGE CUSTODY*

On appeal, mother challenges several rulings by the trial court which refused to reverse or modify the child custody judgment.

Custody orders are reviewed for abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) Once a permanent custody order is in place, it may be modified only if there has been a "significant change of circumstances justifying a modification." (*Id.* at p. 256.) "'[The changed circumstances rule] provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.' [Citation.]" (*Ibid.*; see *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956.) The parent requesting modification must introduce admissible evidence of changed circumstances. (*In re Marriage of Dunn* (2002) 103 Cal.App.4th 345, 348.)

Mother argues she should be granted sole legal and physical custody of the minor, pursuant to Family Code section 3010, subdivision (b). Section 3010 reads as follows: "(a) The mother of an unemancipated minor child and the father, if presumed to be the father under Section 7611, are equally entitled to the custody of the child. [¶] (b) If one parent is dead, is unable or refuses to take custody, or has abandoned the child, the other parent is entitled to custody of the child."

Family Code section 3010 provides the basic ground rules of parental custody, and applies in a situation where no other court order involving custody exists. In the context of criminal liability for the abduction of a child, the courts have held:

"That manifestly is not the purpose of the proviso that only a person 'not having a right of custody' may violate [Penal Code] section 278 [prescribing punishment for child abduction]. Rather, its purpose is to acknowledge that in the absence of an order or decree affecting the physical custody of the child either parent is privileged (peaceably) to take exclusive possession of the child. [Citations.] *Prior to a judicial order depriving a parent of full custody both parents have 'a right of custody.'* [Citation.]" (*People v. Irwin* (1984) 155 Cal.App.3d 891, 896-897, italics added.) An order granting sole custody to one parent, and thus depriving the other parent of custody, such as the judgment in this case, alters the landscape, and makes the presumptions of Family Code section 3010 inapplicable.

Mother contends father has abandoned the minor or is unable to or refuses to take custody of the minor. "The meaning of 'abandonment' is not provided in former section 279 [of the Penal Code] or section 3010 of the Family Code, but the term has been given specific and technical definition by statute and case law. The definition of '"abandonment" most frequently employed by appellate opinions' is '"an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same" . . . .' [Citations.]" (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1315, fn. omitted.) Father has consistently appeared through counsel at hearings in the trial court, has maintained contact with the minor through Skype, and has continued to provide for the minor's needs. Father has not abandoned the minor within the meaning of Family Code section 3010, subdivision (b).

Mother repeatedly contends that the trial court found father abandoned the minor. What the court actually said when appointing father's former counsel as a temporary guardian, was that father had "provided for the minor's care," but that if the paternal aunt had to move back to Napa "leaving the minor without any supervision . . . , it would appear [father] is abandoning the minor." Because father was able to continue

10

providing for the minor until the court approved the minor's move to Napa, no abandonment occurred.

While father has not been able to enter the United States, he has exercised his physical and legal custody rights over the minor. During the time father has been unable to be with the minor, he has arranged for her care and well-being. In the context of juvenile dependency proceedings, a parent is deemed to have left a child without support when the parent cannot arrange for the care of the child, or when the adult with whom the child resides in the absence of the parent can no longer provide for the child's care or support. (Welf. & Inst. Code, § 300, subd. (g).) Although father is unable to enter the United States, he has provided for the care of the minor through his mother, and then his sister-in-law.

Even if mother were correct that father cannot exercise physical custody over the minor while residing outside the United States, that does not mean that custody must be transferred to mother. The trial court found joint custody or sole custody to mother would not be in the minor's best interests. Father's residency was not a part of that decision, so a change in father's residence does not require reversal of the final custody judgment. None of mother's various requests for orders provides any evidence of changed circumstances involving the factual findings supporting the trial court's determination of custody.

And even if the physical custody order needed to be changed due to father's inability to enter the United States, there would be no reason to change legal custody of the minor. Given the trial court's earlier findings about mother and father's inability to coparent, any change in legal custody would not be in the minor's best interests. If father lost custody based on his inability to enter the United States, as mother argues, the relief to be granted would not be automatically awarding sole custody to mother; it would be a new evidentiary hearing to determine what is the best solution "according to the best

11

interest of the child as provided in [Family Code] Sections 3011 and 3020." (Fam. Code, § 3040, subd. (a).)

Mother also argues that the trial court violated Family Code section 3040, which sets the order of preference for awards of custody. This statute is not applicable, however, because none of the trial court's postjudgment orders contemplates, much less changes, the award of custody to anyone other than father. Permitting the minor to live with her paternal aunt does not effect a change of the custody judgment, and the order appointing father's prior counsel as the temporary guardian was only a temporary measure. The cases and statutes mother cites regarding awarding custody to a nonparent are inapposite.

Throughout her appellate briefs, mother expresses concern that the trial court's orders are effecting a "travesty of justice," and denying mother and the minor their fundamental rights. As detailed in *M.S. v. R.D.*, *supra*, G049068, mother accused father of sexually abusing the minor, then stipulated and testified that no abuse had occurred, only to withdraw from the stipulation and again claim that sexual abuse had occurred. Since the entry of the trial court's custody judgment, in which the court expressed a goal of joint custody, mother has accused father of taking the minor out of the country; failed to return the minor at the end of a scheduled visitation; violated no-contact orders; posted the minor's name and photograph on social media Web sites; provided sealed, confidential court records to various third parties; encouraged the minor's court-appointed psychotherapist to violate privilege and the duties of confidentiality; supported a petition for guardianship of the minor filed by mother's husband, who had previously been accused of assaulting mother; and continued to submit to the court declarations and depositions of witnesses to support mother's claim that father has molested the minor, and that mother did not coach the minor to make accusations of molestation, despite the trial court's findings to the contrary. In short, this case may well be a travesty of justice, but not in the way mother suggests.

## II.

### *REQUEST TO REMOVE THE MINOR'S COUNSEL*

The trial court denied mother's request to remove the minor's counsel. Mother argues that the court abused its discretion in doing so, and also argues that the court erred by refusing to receive live testimony from Dr. Reinhart in support of that request. The appointment of counsel for a minor in a custody proceeding is a matter left to the discretion of the trial court. (Fam. Code, § 3150.)[5]

As explained more fully in the companion opinion, *M.S. v. R.D.*, *supra*, G049068, Dr. Reinhart was appointed by the court as a therapist for the minor. Dr. Reinhart's confidential communications with the minor were unquestionably covered by the psychotherapist-patient privilege. (Evid. Code, §§ 1012, 1014.) The minor did not waive the privilege. Dr. Reinhart, however, submitted to a deposition in the guardianship proceedings. In that deposition, she refused to answer questions regarding her direct communications with the minor, but she testified as to her conclusions drawn from those communications. Mother submitted excerpts from the transcript of Dr. Reinhart's deposition in support of the request to remove the minor's counsel. Dr. Reinhart's declaration was also a part of the trial court's record, having been filed in support of mother's postjudgment request for a modification of the custody judgment. The court indicated at the hearing on the request to remove the minor's counsel that it had read both the deposition and the declaration.

---

[5] Family Code section 3150 provides: "(a) If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding, provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 of the California Rules of Court. [¶] (b) Upon entering an appearance on behalf of a child pursuant to this chapter, counsel shall continue to represent that child unless relieved by the court upon the substitution of other counsel by the court or for cause."

13

Mother argues that she had an absolute right to have Dr. Reinhart testify at the hearing on the request to remove the minor's counsel, citing Family Code section 217, which provides: "(a) At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties. [¶] (b) In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing. . . . [¶] (c) A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing."

California Rules of Court, rule 5.113 sets forth the factors supporting a finding of good cause to exclude live testimony: "(b) Factors [¶] In addition to the rules of evidence, a court must consider the following factors in making a finding of good cause to refuse to receive live testimony under Family Code section 217: [¶] (1) Whether a substantive matter is at issue—such as child custody, visitation (parenting time), parentage, child support, spousal support, requests for restraining orders, or the characterization, division, or temporary use and control of the property or debt of the parties; [¶] (2) Whether material facts are in controversy; [¶] (3) Whether live testimony is necessary for the court to assess the credibility of the parties or other witnesses; [¶] (4) The right of the parties to question anyone submitting reports or other information to the court; [¶] (5) Whether a party offering testimony from a non-party has complied with Family Code section 217(c); and [¶] (6) Any other factor that is just and equitable. [¶] (c) Findings [¶] If the court makes a finding of good cause to exclude live testimony, it must state its reasons on the record or in writing. The court is required to state only those

14

factors on which the finding of good cause is based. [¶] . . . [¶] (e) Witness lists [¶] Witness lists required by Family Code section 217(c) must be served along with the request for order or responsive papers in the manner required for the service of those documents . . . . If no witness list has been served, the court may require an offer of proof before allowing any nonparty witness to testify."

Even if live testimony was permitted, pursuant to Family Code section 217, subdivision (b), there was substantial evidence from which the trial court could have made a finding of good cause not to permit live testimony.[6] The removal of the minor's counsel is not a substantive matter, pursuant to California Rules of Court, rule 5.113(b)(1). Pursuant to rule 5.113(b)(6), the court properly considered Dr. Reinhart's violation of the psychotherapist-patient privilege and of the duty of confidentiality in finding good cause for excluding live testimony on this issue. In addition, Dr. Reinhart's live testimony was not relevant, pursuant to Family Code section 217, subdivision (a) and California Rules of Court, rule 5.113, as discussed *post*.

Family Code section 217, subdivision (c) and California Rules of Court, rule 5.113(e) do not appear to have been complied with, as no witness list identifying Dr. Reinhart appears in the appellate record.[7]

Turning to the substance of mother's request that the minor's counsel be removed, we find no abuse of discretion by the trial court. Mother argued that counsel should be removed because he was not acting in the minor's best interests. Specifically, mother criticized the minor's counsel for failing to present to the trial court Dr. Reinhart's opinions that the minor had been the victim of a crime. What must be

---

[6] The trial court did not make findings on the record or in writing pursuant to Family Code section 217, subdivision (b) or California Rules of Court, rule 5.113(c). It is obvious from the transcript of the hearing, however, that the court did not find good cause for hearing live testimony, as explained in the text.

[7] Mother asserts in her opening brief on appeal that Dr. Reinhart "was subpoenaed and available to testify on the date of the hearing." Nothing in the appellate record, however, supports that assertion.

15

remembered is that the minor's first counsel, Harold LaFlamme, refused to allow Dr. Reinhart to testify at the child custody trial, despite mother's claim that Dr. Reinhart would have testified the minor had been the victim of a crime. As we explained in the companion opinion, *M.S. v. R.D.*, *supra*, G049068, there was no prejudice due to the lack of Dr. Reinhart's testimony at trial because Dr. Reinhart's child abuse report was thoroughly investigated, after which any allegation of child abuse was determined to be unsubstantiated. Mother fails to explain how Cate's failure to attempt to bring those allegations to the court's attention again was not in the minor's best interests.

Mother argues that Cate should have been removed as the minor's counsel because he had too strongly aligned himself with father. Mother relies on the fact that the minor's counsel submitted declarations from father and the minor's paternal aunt in support of the minor's request to move to Napa. Because the request was made by the minor, we find nothing improper in the minor's counsel preparing those declarations, and including his own name, state bar number, and contact information on the title page of each.

Mother also argues Cate failed to ensure that the minor was regularly undergoing therapy with her court-appointed psychotherapist. The factual basis for this claim is mother's declaration that she was "informed" that the minor had not yet been seen by the new therapist, more than six months after she had been appointed. Mother's unsupported contention was an insufficient ground for removing the minor's counsel.

Further, Dr. Reinhart's opinions were not relevant to mother's repeated attempts to modify the custody judgment. The custody judgment could only be modified by a showing of changed circumstances. (*Montenegro v. Diaz*, *supra*, 26 Cal.4th at p. 256.) Dr. Reinhart's opinion that the minor had been the victim of a crime predated the judgment, and was not evidence of new facts or a change in circumstances. In her deposition, Dr. Reinhart opined that Dr. Coleman's treatment of the minor was inappropriate because of the type of therapy used, her lack of experience with minor

16

patients, conducting therapy at the same time that the minor was in therapy with Dr. Reinhart, and Dr. Coleman's previous relationship with father.[8] Dr. Reinhart became aware of Dr. Coleman's therapy with the minor because the minor's previous counsel, LaFlamme, instructed Dr. Coleman to contact Dr. Reinhart and provide the information to her, and further instructed Dr. Coleman to stop seeing the minor. Therefore, all of Dr. Coleman's contacts with the minor occurred before Cate was appointed as the minor's counsel.

## III.

### *THE MINOR'S MOTION FOR SANCTIONS AND THE MINOR'S SECOND REQUEST FOR JUDICIAL NOTICE AND/OR REQUEST TO TAKE ADDITIONAL EVIDENCE ON APPEAL*

The minor has brought a motion under California Rules of Court, rule 8.276(a)(1) for an order imposing sanctions against mother and her counsel for pursuing a frivolous appeal. This motion is virtually identical to the motion filed in the companion case (*M.S. v. R.D.*, *supra*, G049068), and the same analysis applies in this case. The minor requests sanctions in the amount of $5,164.68 for attorney fees and costs incurred in preparing the minor's appellate brief. The minor also requests that mother and her counsel be ordered to pay sanctions to the clerk of this court to compensate the state for the cost of processing the appeal. Mother filed opposition to the motion for sanctions.

Mother's appeal is neither frivolous nor pursued solely to cause delay. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a)(1).) The minor fails to point to any evidence supporting a claim that mother's appeal was pursued for an improper

---

[8] We note that father's declaration in opposition to Tong's declaration, discussed *ante*, refutes much of Dr. Reinhart's testimony regarding Dr. Coleman.

17

motive. There is no evidence that mother's appeal caused any harassment of father, who did not even file an appellate brief.

The minor identified the following as evidence that the appeal is objectively without merit: (1) mother argued for application of an erroneous standard of review, (2) mother argued about orders the minor claims are moot, (3) mother relied on facts outside the record, (4) mother argued about the merits of appeal No. G049068, and (5) none of the issues raised by mother's appeal "is remotely arguable." While these may constitute a failure to comply with the appellate rules, they do not rise to the level of an appeal that is completely without merit. Our affirmance of the postjudgment orders does not mean that mother's appeal was wholly without merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.)

The minor candidly admits that one of the reasons for bringing the motion for sanctions is to deter future counsel from representing mother should she choose to pursue the litigation. A request for sanctions in one case should not be intended to prevent the other party from retaining counsel in other matters.

The minor also asks this court to take judicial notice of a federal complaint filed by mother against father, the minor's former counsel, the SSA social workers, the Orange County Superior Court, former visitation monitors, and others, alleging, inter alia, violation of mother's and the minor's due process rights. As a record of a United States court, this is a matter of which this court may take judicial notice. (Evid. Code, § 452, subd. (d)(2).) We decline to take judicial notice of this complaint, however, because mother's separate pursuit of damages for alleged federal relief is not relevant to the issues raised on this appeal, nor is it relevant to the motion for sanctions.

18

The postjudgment orders are affirmed.  The minor shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.